### LEWIS ADKINS *v.* LEWIS MEADOWS.

**Suit in Equity to Collect Debts—Contents of Petition—Attachment.**

Where a creditor seeks in equity to enforce the collection of a debt he must allege that he has recovered a judgment in person against the defendant whose property he seeks to attach, that the judgment is unpaid, that he has caused execution to issue on his judgment directed to the county where the judgment was rendered or in which the defendant resides, that the execution was placed in the hands of the proper officer while in force, and that it had been returned by the officer indorsed, in substance, no property found.

**Exhaustion of Legal Remedy.**

A plaintiff in a court of equity seeking to attach property or effects of his creditor must show that he has exhausted his ordinary legal remedy for collecting his debt.

APPEAL FROM WHITLEY CIRCUIT COURT.

September 13, 1876.

OPINION BY JUDGE COFER:

The petitions in these cases, when tested by Sec. 474 of the Civil Code, are all defective. Such a petition should contain the following allegations, or their equivalents:

(1) That the plaintiff has recovered a judgment in person, and against the defendant whose property or effects he seeks to attach. (2) That the judgment remains in whole or in part unsatisfied. (3) That the plaintiff has caused execution of fieri facias to issue on the judgment directed to the county in which the judgment was rendered, or in which the defendant resided. (4) That the execution was placed, while alive and in force, in the hands of the proper officer. (5) That it had been returned by the officer indorsed, in substance, no property found. And if the judgment was rendered in the county in which the suit to enforce it is brought the suit must be in the court from which the execution issued.

The judgment sought to be enforced in Meadows's suit was rendered in the quarterly court of Whitley county, and the only execution ever issued thereon was issued from that court. The circuit court of Whitley county, therefore, had no jurisdiction of Meadows's suit under Sec. 474, and we need not notice the defects in his petition, until we come to consider whether the court had jurisdiction independently of the statute. If he desired to go into the circuit court to enforce the judgment by subjecting land fraudulently conveyed, or to which the debtor, Adkins, had only an equitable title, he should have obtained a copy of the judgment and proceeded under Sec. 846 of the code to procure an execution from the clerk of the circuit court, and upon the return of nulla bona on such an execution the circuit court would have had jurisdiction.

The judgment in favor of Corch, Cook & Holt was rendered in the Whitley Circuit Court, and it is alleged that an execution issued thereon was returned by the sheriff of Whitley county, indorsed no property found; but the petition fails to show when or to what county it issued, or that it came to the hands of the sheriff while in force. Harp's petition is subject to the same objections. We then proceed to inquire whether the petitions or any of them are sufficient as in the nature of creditors' liens, when tested by the rules of equity.

Before the adoption of the code there was a well-established chan-

cery jurisdiction which might be invoked by a creditor in order to attain a discovery, and to subject to the satisfaction of the judgment equitable interests of the debtor or property fraudulently conveyed by or held in fraudulent trust for him. But it was generally if not always essential to the jurisdiction of the chancellor in such a case that it should appear from the bill that the creditor had reduced his demand to a judgment and secured a return of nulla bona, in other words, that legal process had been exhausted and reduced to insolvency. Bispham's Equity, 469.

The plaintiffs in these causes did not show that they had exhausted the ordinary legal remedy for collecting their debts. They did not show that executions which might have been levied upon land had been placed in the hands of the sheriff of Whitley county, while in full force, and been returned by him no property found, and Meadows failed to show that he had ever obtained an execution leviable upon real estate. They did not any of them allege in terms that Adkins had no property or that he had not sufficient property subject to execution to satisfy the judgments, but it is evident that they can make such allegation and we will treat the subject as if they had done so. Thus treated the petitions show these facts: (1) that Meadows has an unsatisfied judgment of the Whitley Quarterly Court, and holds a note against Lewis Adkins; that Corch, Cook & Holt and Harp have unsatisfied judgments of the Whitley Circuit Court against him; (2) that he owns no property subject to execution out of which their debts can be satisfied; and (3) that after the creation of the debts evidenced by the judgments and note, Adkins, without consideration, conveyed several hundred acres of land situated in Whitley county to his son-in-law, J. B. Freeman, with the intention to hinder and defraud his creditors. But all the petitions fail to show, by the highest and best evidence, returns of nulla bona, that legal process would be ineffectual, or by any sort of evidence that such process has been exhausted.

The question to be decided then, is, can a creditor who has reduced his debt to judgment but has not had a return of nulla bona on an execution issued thereon, come into a court of equity and have a fraudulent conveyance by the debtor set aside, upon an allegation that the debtor has no property subject to execution out of which the judgment can be satisfied? If this question be answered in the affirmative then the further question will arise on account of the note held by Meadows, whether such relief can be attained without first recovering judgment for the debt.

Proceedings such as this are merely in aid of the common-law courts, and like other purely equitable remedies can only be resorted to when the party complaining is without remedy at law. This has always been one of the fundamental rules of courts of equity, and it has been so often decided by this court that a creditor cannot come into equity to set aside a fraudulent conveyance until he has obtained a judgment and return of nulla bona that we need not do more than refer to the cases. *Gilpin v. Davis,* 2 Bibb 416; *Sharp v. Wickliffe,* 3 Litt. 10; *McKinley v. Combs,* 1 T. B. Mon. 105; *Wickliffes v. Lyon,* 5 J. J. Marsh. 84; *Poague v. Boyce,* 6 Ib. 70; *Moffat v. Ingham,* 7 Dana 495; *Halbert v. Grant,* 4 Mon. 580.

It is insisted for the appellants that as no attachments were sued out and levied on the land, the plaintiffs acquired no lien by their suits to set aside the conveyance. Such a proceeding is against the land itself, and creates a lien from the commencement of the suit, and when there are separate suits commenced at different times the plaintiffs will be entitled to priority in the order in which their suits were commenced. *Moffat v. Ingham, supra.*

Personal judgments were rendered against Adkins, not only for the note held by Meadows, but for the amount of his judgment in the quarterly court; and judgments were also rendered for the amount of the former judgments of Corch, Cook & Holt, and of Harp. We see no reason for reversing the personal judgment on the notes, but the judgments for the amounts for which the several plaintiffs already had judgment were erroneous. They have two personal judgments in force for the same debt. Corch, Cook & Holt and Harp may have leave to amend their petitions so as to make them conform to the law as herein indicated, but as a return of nulla bona upon an execution issued from the quarterly court will not authorize a suit in equity in the circuit court of the same county, under Sec. 474, or a suit in the nature of a creditor's bill, so much of Meadows's petition as seeks to set aside the deed and subject the land conveyed by it should be dismissed, unless some one of the other creditors shall so amend his petitions as to show a right according to the principles herein announced to subject the land for fraud in the conveyance to Freeman, in which case Meadows's and any other creditor may be allowed to come in and set up their debts, for if the conveyance is fraudulent as to one it is so as to all, and all may come in when one has shown a case entitling him to avoid the deed.

It does not appear that process upon Gatliffe's cross-petition

against his co-defendants, Adkins and Freeman, was ever served on them, or that they ever appeared to it, and Gatliffe's judgment is void. The counsel for the appellant insist that Adkins is entitled to a homestead exemption in the land, covered by the alleged fraudulent deed. The deed is not in the record and it does not appear whether Adkins's wife, if he had one, united in the deed or not. If he had a wife and she joined in the deed in such way as to pass the entire estate in the land, the deed, although invalid as to creditors, if fraudulent, is nevertheless valid as to the grantors, and the homestead passed to Freeman with the residue of the land. If, however, Adkins, at the time of making the conveyance, was entitled to a homestead, and his deed was such as to pass the whole estate to Freeman, Freeman will be entitled, in case the deed is finally held to be fraudulent, to have the value of a homestead set off to him out of the land or to receive it in money out of the proceeds of the sale. *Lisby v. Perry,* 6 Bush 515; *Kuevan v. Specker,* 11 Ib. 1.

The judgments are all *reversed,* except the personal judgment in favor of Meadows against Adkins on the note, and the cause is remanded for further proceedings. Unless the petitions are amended within a reasonable time the causes should be dismissed. If the exhibits referred to in the various pleadings had been filed, and more care had been bestowed by counsel upon the preparation of these causes, and by the clerk in making out the transcript, much labor on the part of the court and considerable delay in the final determination of the cause would have been avoided.

*Smith & Watkins, for appellant.*
*John L. Scott, for appellee.*