No. 17.—STEPHEN HARVEY, and others, plaintiffs in error, *vs.* JAMES ANDERSON, executor, &c. defendant in error.

[1.] To render a witness incompetent, on the ground of interest, it must be shown that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. The interest to exclude a witness must be a present, certain, and vested interest, and not an interest uncertain, remote or contingent.

[2.] Whenever the *capacity* of a testator is in any degree *doubtful* at the time of the execution of his will, there must be proof of instructions given, or of reading it over, the more especially when the will is drawn by one who takes a beneficial interest under it.

Caveat to will, in Upson Superior Court. Motion for a new trial, decided by Judge STARKE. October adjourned Term, 1851.

The facts in this case are as follows:

Mrs. Macharine Bunkley made a will, dated on the 28th day of January, 1850, in which she appointed James Anderson her executor, and in which she left to him a legacy consisting of several negroes, and $500.00 in money.

Mrs. Bunkley died, and Anderson, the executor, propounded the will for probate in the Court of Ordinary of Upson County, when a caveat was entered by Stephen Harvey, and others, as a portion of the heirs at law of Mrs. Bunkley.

An appeal was taken by consent, to the Superior Court of said County.

The cause came on to be tried on the appeal, at October adjourned Term, 1852. Much testimony was introduced on either side, both to sustain and impeach the capacity of Mrs. Bunkley to make a will. The decision of this Court, however, renders it necessary that the following only should be set out.

John M. Barksdale, *sworn* on the part of caveators, on his *voire dire :* "He was a legatee under the will in controversy, for four or five thousand dollars ; that he would as soon this will was set aside as not; that he had seen another will in the possession of Dr. Anderson, dated in 1848, without the date of month or day; that if this will was set aside, he believed an attempt would be made to set up the other; that his legacy in the *old will* is larger than in the one in contest; that he was not an heir at law of the testatrix." "The genuineness of the old will was admitted."

The Court overruled the objection to the competency of the witness, who proceeded to testify, "that he had a conversation with Anderson, at his own house, in May, 1850 ; he asked if witness had received a letter from him, and on witness answering him in the affirmative, he said he had written a letter to my (witness') father some time before, informing him of the death of his sister, and of the disposition she had made of her property, which was not a correct letter; that after informing himself better on the subject, he had thought proper to send me a letter, which was about correct. On the next day, witness went over to Mrs. Towns', and speaking to her on the subject of the will, she said there was no monied legacy of $5000.00 left to his father's three children, and that she had a copy of the will ; the next day witness saw Anderson, and told him what Mrs. Towns had said about the $5000.00 legacy ; Anderson said it was a mistake—he wrote the will and knew better what it contained than Mrs. Towns. The next day witness had a conversation with Anderson, in Thomaston ; after examining the will, and finding no such legacy, he called on Anderson for an explanation ; that he asked him why he had written such letters to Warren County; Anderson said it was inadvertence in his writing the will—he knew it was the intention of the testatrix to

Harvey *et al. vs.* Anderson.

have given such a legacy, and he had notes in his possession
to that effect; he said while he was writing the will, the wit-
nesses came in before he got through; that they kept hurrying
him to know if he had got through—and when he got through,
he invited the witnesses into an adjoining room; and he did not
know that testatrix understood him sufficiently well to detect
any error in the will, from the fact that she was very deaf and
feeble in health; he said he was so much mortified about the
mistake he had made, that he had almost obtained his consent
to relinquish his legacy to make up my loss; that he was going
to dine with O. C. Gibson that day, and would consult him, and
when he returned, he would give (witness) an answer; and in
the evening of that day, he would relinquish his interest in the
negroes bequeathed to him in the will, to prevent a caveat from
coming against the will, but did not do it. Witness told him
he would like to have an instrument of writing to that effect;
Anderson replied, he did not have time to attend to it then, but
would do it at some other time; the next day (witness) saw him
(Anderson) at his own house, when he said he had declined the
idea of relinquishing—that his wife would not give her consent
to his doing so."

There was a conflict of evidence, as to the testamentary ca-
pacity of the testatrix, and as to her knowledge of the contents
of the will.

The Jury found a verdict against the will. Counsel for the
"propounder" moved for a new trial, which was granted by the
Court, upon the following grounds:

"1st. Because the Court erred in admitting John M. Barks-
dale, to be sworn and examined as a witness in the cause.

"2d. Because the Court erred in allowing the admissions of
James Anderson to be given in evidence."

Which decision is assigned as error.

WORRILL & SMITH, for the plaintiffs in error.

1. John M. Barksdale, (on account of whose testimony a new
trial was ordered) had no direct, certain, or vested interest in the

result of the suit, because, he swears against an interest of several thousand dollars; and if the will is set aside, the effect of the judgment would be to destroy that interest and declare an intestacy; this is apparent on the bill of exceptions, (*Adams vs. Barrett*, 3 *Ga. Rep.* 277. *Matthews vs. Poythress*, 4 *Ga. Rep.* 296,) and if he was shown to be incompetent, the objection was not taken at the proper time. *Greenleaf*, §421.

2. He had no interest in the record which disqualifies him. The judgment in this case might be used in evidence in a suit to set up the old will; but for what purpose? It would only prove the fact that such a judgment had been rendered, and nothing more. *Greenleaf on Evidence*, §538. And when the judgment is offered and received in evidence, it fixes no interest or benefit in the witness; he can only take the interest by proving the old will; and this he must do, independent of this judgment, and it may be impossible to do this; and even if this should be done, the witness might be excluded by an intermediate will. It therefore appears that his interest is as remote as a paid legatee of a specific sum or chattel, and the creditor of an estate not in course of liquidation, &c. who are competent. 1 *Greenleaf*, §408, 409. *Jackson vs. Sanderson*, 4 *Johns. Rep.* 144.

3. The admissions of the executor were properly received. 1 *Greenleaf Ev.* §172, 174. *Atkins vs. Sawyer*, 1 *Pickering*, 192. *Davis vs. Calvert*, 5 *Gill. & Johnson*, 269. *Billinghurt vs. Vickers*, 1 *Phillim*, 71.

4. Admitting the testimony of John M. Barksdale to have been improperly admitted, still it was no cause for a new trial. Because if his testimony and the sayings of the executor were stricken out, the Jury would have been obliged, under the remaining testimony, to find the same verdict. *Stephens et al. vs. The Governor*, 1 *Kelly*, 580. *Davis vs. Lowman*, 9 *Ga. Rep.* 504. *Murphy vs. Justices, &c.* decided at Milledgeville, May Term, 1852.

5. When the person who prepares a will, or conducts the execution of it, is himself benefited by its dispositions, evidence of the signing alone will not be sufficient; but the proof must go to a knowledge of the contents of the will. 1 *Williams on*

Harvey *et al. vs.* Anderson.

*Ex'ors,* 324.   *Billinghurst vs. Vickers,* 1 *Phillim,* 67 *to* 72. 1 *Bailey's Rep.* 92.   *Sankey vs. Lilly,* 1 *Carter's,* 351.   *Beall vs. Mann,* 5 *Ga. Rep.* 456.

6.  The following cases show, that under like circumstances, probate has been refused when there was no fraud; and although there may be some circumstances in support of the will, yet the proof must be strict, especially when the party preparing the will is in the confidence of the testator.   *Paske vs. Ollet,* 2 *Phillim,* 324.   *Billinghurst vs. Vickers,* 1 *Phillim,* 70, 71. *Sankey vs. Lilly,* 1 *Carter's,* 350.

J. J. FLOYD and O. C. GIBSON, for defendants in error.

1st.  This Court will not interfere with the discretion of the Court below, in such a cause as this.   9 *Geo. Rep.* 19.   8 *Geo. Rep.* 311.   7 *do.* 269,   3 *Kelly,* 322, '3.   1 *Kelly,* 618.

2d.  If improper evidence be admitted, though only cumulative, it is good ground for new trial.   3 *Cow.* 621.   16 *Johns.* 89.   4 *Cranch,* 70.   8 *Geo. Rep.* 207, (5.)

3d.  And the admissions of Anderson were improper.   1 *Greenleaf,* §174.   4 *Cow.* 483 *to* 92.   2 *Doug.* 652.   11 *East,* 578 *to* 89.   4 *Cowp.* 492.

*Interest* must be a *joint* and not a *community* of interest, to make admissions evidence.   1 *Gr.* 176.   3 *Cow.* 622.   3 *Johns. Rep.* 536.   6 *Ib.* 267, '9.   10 *Ib.* 66.

Judgment even against administrator, no evidence against heir.   1 *vol. N. C. Rep.* 96.

4th.  The witness, Jno. Barksdale, was interested in the event. of this suit.

*By the Court.*—WARNER, J. delivering the opinion.

[1.]  The plaintiffs in error insist that the Court below erred in granting a new trial in this case.   First, on the ground that the testimony of John M. Barksdale, was improperly admitted.   Second, on the ground that the admissions of Anderson, who was the propounder of the will, the executor thereof, and legatee

under it, were improperly admitted in evidence to the Jury at the trial; and third, that conceding there was error in the admission of the evidence specified in the first and second grounds taken for a new trial, still the verdict was right under the law, for the reason, that the will was not *sufficiently proved*, the testatrix being of *doubtful* capacity at the time the will was executed, which was written by Anderson, who takes a beneficial interest under it, and who was her *confidential* friend, agent, and family physician.    Does the record show that John M. Barksdale, whose testimony was received at the trial, on the part of the caveators, was so directly interested in the event of the suit, as to render his testimony inadmissible?    In our judgment, he was not such an interested witness, in the event of that suit, as would exclude him; and therefore, the Court erred in granting a new trial on that ground.    The witness was a legatee under the will of the testatrix, which his testimony was offered to set aside; but the argument is, that he was also a legatee under a *prior* will of the testatrix to a much larger amount, and that the direct effect of his evidence would be, to set up the old will, and confirm his legacy under that.    On the trial, a paper was exhibited, purporting to be a *prior* will of the testatrix, dated in 1848, but without any month or day specified, her signature to which was admitted to be genuine.    The judgment in this case, would not be evidence for the witness, or others claiming under the old will, in an attempt to set up and establish *that old will.* Each instrument is wholly independent of the other in that respect, and must stand or fall, by *independent evidence.*    The record in this case will be evidence that a judgment was rendered against the validity of the paper now propounded as the will of the testatrix; but that record will afford no evidence whatever as to the *validity of the old will*, nor can the same be received in evidence to establish *that fact*, in favor of the witness.

It is to be recollected, that the interest of the witness in any legacy, to which he might be entitled under the instrument purporting to be the old will, does not become *certain* and *fixed*, until that instrument shall be established and admitted to probate, as the last will and testament of the testatrix; *non constat,*

Harvey *et al. vs.* Anderson.

that there is not an *intermediate will*, or that the testatrix, from want of capacity, or other cause, died *intestate*. The interest of the witness is not therefore *direct*, and *immediate* in the *event of this suit;* neither will he gain any thing, by the direct legal operation of the judgment vacating the will in question, under which he takes a legacy ; but on the contrary sustains a *direct loss*, to the extent of his legacy, under it. The testimony of this witness was admissible, according to the rule established by this Court, in *Adams vs. Barrett,* 3 *Kelly,* 277, and *in Matthews vs. Poythress,* 4 *Geo. R.* 297. The objection went to his *credit*, and not to his *competency.*

Were the admissions of Anderson, who was the propounder of the paper offered for probate, the nominated executor therein, and legatee under the same, competent evidence for the consideration of the Jury at the trial ? The general rule is, that the declarations of *a party to the record*, or of one *identified* in interest with him, are, as against such party, admissible in evidence ; and this general rule admitting the declarations of a party to the record in evidence, applies to *all cases* where the party has *any interest* in the suit, whether others are *joint parties* on the same side with him, or not, and howsoever that interest may appear, and whatever may be its *relative amount.* 1 *Greenleaf's Ev.* sections 171, 172. *Spargo vs. Brown,* 17 *Eng. Com. Law Rep.* 526. The argument against the admission of this testimony is, that it will have the effect to enable a party to the record, who has a small legacy under a will, by fraud and corruption to make admissions which may destroy other legacies under it, ten times greater than his own. However true this *abstract* proposition might be, when applied to such a case as is supposed, it is a sufficient answer to say, that no such a state of facts is presented by this record. The facts of this case are such as required a *practical* application of the general rule of evidence. The party to the record in this case was not a *mere naked trustee*, without *any interest* in the subject-matter of the litigation; but on the contrary, was *deeply interested* in it. In fact, the main ground of attack made on the instrument offered for probate, is on account of the manner which it was procured by

him from the testatrix. He was interested to sustain the *fairness* of the transaction in procuring the instrument, not only on account of *the legacy* which he would receive under it, as well as the *commissions* to which he would be entitled as the nominated executor of this large estate, but on account of what should be considered a much higher motive, *his character as a man in the community in which he lived.*

Although the other legatees, under the paper offered for probate, might have a larger interest under it than the propounder of it, who is a party to the record, seeking to establish it, not only for his own benefit, but for theirs also—still they are *identified in interest with him*, and the general rule of evidence is applicable, both to him and them.

In *Davis vs. Calvert et al.* (5 *Gill. and Johns. Rep.* 269,) it was held that *declarations* adverse to the will, *made by the executor*, who was a *party to the record*, and a contingent devisee representing every interest under the will, were competent evidence to go to the Jury on the trial of a caveat to the will. This case appears to have been well considered by the Court, and is directly upon the point. The Court below, on the trial of this cause, took the true and legal view of these questions, when it admitted the evidence; but erred in reversing its own judgment, and granting the new trial, on the ground of its improper admission.

[2.] In relation to the third position taken against the granting of a new trial in this case, by the counsel for the plaintiff in error, and which was so elaborately and satisfactorily argued by them, we have to say, that had we found it necessary to have affirmed the judgment of the Court below, on the two first grounds taken; yet, we should not have been disposed to have disturbed the verdict of the Jury even then, on the facts presented by this record. The rule of law undoubtedly is, that whenever the *capacity* of the testator, or testatrix, at the time of the execution of the will, is in any degree *doubtful*, there must be proof of instructions given, or of reading it over; the more especially, when the will is drawn by one who takes a *beneficial interest* under it.

In *Billinghurst vs. Vickers*, (1 *English Ecclesiastical Rep.* 70,)

Sir John Nicholl held, that it was an established principle, that where capacity is *doubtful* at the time of execution, there must be proof of instructions, or of reading over.   *Tompkins vs. Tompkins*, 1 *Bailey's Rep.* 92.   *Sankey vs. Lilly*, 6 *Ecclesiastical Rep.* 350.   In *Beall vs. Mann*, (5 *Geo. Rep.* 456,) this Court held that the presumption is strong against a party preparing a will, who takes a benefit under it, and although it will not be declared void on that account, strong evidence of *intention* in such a case will be required.   The *capacity* of the testator in that case, was not shown to have been *doubtful*, by the evidence at the trial.   In this case, there is much conflict of evidence as to the *capacity* of the testatrix, and we should have had great difficulty in coming to the conclusion that there is sufficient evidence in the record to establish the paper propounded as her last will and testament.   Let the judgment of the Court below, granting a new trial, be reversed.