PETER MACKIN et al., appellants,

*v.*

VIRGINIA MACKIN, respondent.

A beneficiary under a will may, as the proponent, be a witness in proceed-
ings on a *caveat* to establish the will.

Mackin v. Mackin.

On appeal from decree of Atlantic orphans court, affirming order of surrogate admitting to probate a paper purporting to be the last will and testament of Thomas Mackin, deceased.

*Mr. H. A. Drake* and *Mr. S. Davis Page* (of Philadelphia), for appellants.

*Mr. P. L. Voorhees,* for respondent.

THE ORDINARY.

Thomas Mackin died at Atlantic City on the 24th of October, 1881. He had lived there from May or June, 1880, to that time. Before he went there he resided in Philadelphia. On the 8th of January, 1880, while, as yet, he resided in the latter place, he made his will, by which he gave $200 to his mother, and the like sum to an orphan nephew, and gave the residue of his property to his wife, the respondent, whom he appointed executrix. His property appears to have amounted in value to about $8,000. It consisted of a house and lot in Philadelphia, a house and lot in Atlantic City, and a mortgage on real property in the former place. He was married to the respondent in

NOTE.—An executor who has accepted the trust and acted under it, is a competent witness to establish it, *Comstock* v. *Hadlyme, 8 Conn. 254; Tucker* v. *Whitehead, 59 Miss. 594; Key* v. *Holloway, 7 Baxt. 575; Rugg* v. *Rugg, 21 Hun 383, 83 N. Y. 592; Childrens Aid Soc.* v. *Loveridge, 70 N. Y. 387; Richardson* v. *Richardson, 35 Vt. 238; Snyder* v. *Bull, 17 Pa. St. 54; Reeve* v. *Crosby, 3 Redf. 74; Martz* v. *Martz, 25 Gratt. 361;* see *Beaubien* v. *Cicotte, 12 Mich. 459; Jones* v. *Larrabee, 47 Me. 474; Piper* v. *Moulton, 72 Me. 155; Lord* v. *Lord, 58 N. H. 7.* The beneficiaries under a will are also competent witnesses, *Sugden* v. *Lord St. Leonards, L. R. (1 Prob. Div.) 154; Shailer* v. *Bumstead, 99 Mass. 112; Garvin* v. *Williams, 50 Mo. 206; Pruyn* v. *Brinkerhoff, 7 Abb. Pr. (N. S.) 400; Dietrich's Estate, 1 Tuck. 129; Conoly* v. *Gale, 61 Ala. 116; Funk* v. *Eggleston, 92 Ill. 515;* see *Dickey* v. *Malechi, 6 Mo. 177; Harding* v. *Harding, 18 Pa. St. 340; Burke's Will, 5 Redf. 369; Schoonmaker* v. *Wolford, 20 Hun 166.* How far a widow, claiming title to chattels adversely to her husband's administrator, is competent, *Baxter* v. *Knowles, 12 Allen 114; Hyneman's Estate, 11 Phila. 135; Johnson* v. *Hall, 9 Baxt. 351;* or claiming dower, *Wentworth* v. *Wentworth, 71 Me. 72; Miltenburger* v. *Miltenburger, 8 Mo. App. 306; Bothwell* v. *Dobbs, 59 Ga. 789.*

The plaintiff in a suit in equity, brought to establish a lost or destroyed will

34

September, 1875. He left no children. His mother survived him, and he had four brothers. There were also the children of a deceased brother. His business, up to about the time when he went to Atlantic City, was peddling ale on commission in Philadelphia. His will was admitted to probate by the surrogate of Atlantic county on the 3d of November, 1881, and letters testamentary thereon issued to the widow. On the 23d of the same month ancillary letters testamentary were issued to her in Philadelphia. On the 30th of December following, a petition of appeal from the order of the surrogate of Atlantic county to the orphans court of that county, was filed by the appellants, Peter and Charles Mackin, two of the testator's brothers. The orphans court, after a full hearing of the matter upon the appeal, by its decree of September 22d, 1882, affirmed the order of the surrogate in all things. From that decree of affirmance this appeal was taken.

The appellants insist that the testator's domicil, at the time of his death, was not in Atlantic City, but was in Philadelphia, and that when he executed the will he was not possessed of testamentary capacity. They also insist that the widow, who was sworn and testified for the proponent on the trial before the orphans

against the administrators and next of kin of the alleged testator, is not a competent witness in his own behalf, *Timon* v. *Claffy, 45 Barb. 438, 41 N. Y. 619 ;* see *Howell* v. *Taylor, 11 Hun 214.* So in an action to set aside a will, *Rich* v. *Bowker, 25 Kan. 7.* See note to *Brague* v. *Lord, 2 Abb. N. Cas. 8.*

The acts or declarations of one of several executors or legatees are inadmissible in evidence as against the others, *Shailer* v. *Bumstead, 99 Mass. 112,* (overruling *Atkins* v. *Sanger, 1 Pick. 192*); *Heuston* v. *Heuston, 2 Ohio St. 488 ; Thompson* v. *Thompson, 13 Ohio St. 356 ; Osgood* v. *Manhattan Co., 3 Cow. 612 ; Boyd* v. *Ely, 8 Watts 66 : Hamberger* v. *Root, 6 W. & S. 431 ; Clark* v. *Morrison, 25 Pa. St. 453 ; Dillard* v. *Dillard, 2 Strobh. 89 ; Blakey* v. *Blakey, 33 Ala. 611 ; Bunyard* v. *McElroy, 21 Ala. 311 ; Dye* v. *Young, 55 Iowa 433 ;* but see *Armstrong* v. *Farrar, 8 Mo. 627 ; Allen* v. *Allen, 26 Mo. 327 ; Reagan* v. *Grim, 13 Pa. St. 508 ; Beall* v. *Cunningham, 1 B. Mon. 399 ; Rogers* v. *Rogers, 2 B. Mon. 324 ; Milton* v. *Hunter, 13 Bush 163 ; Peeples* v. *Stevens, 8 Rich. 198 ; Garvin* v. *Williams, 50 Mo. 206 ; Southern Ins. Co.* v. *Wilkinson, 53 Ga. 535.* They are admissible as against themselves, *Morris* v. *Stokes, 21 Ga. 552 ; McCraine* v. *Clarke, 2 Murphey, 317 ; Nusseur* v. *Arnold, 13 S. & R. 323 ; Burton* v. *Scott, 3 Rand. 399 ; Brown* v. *Moore, 6 Yerg. 272 ; Seale* v. *Chumbliss, 31 Ala. 19 ; Dennis* v. *Weekes, 46 Ga. 514.*—Rep.

court (she was not an attesting witness), was not a competent witness for the will.   This objection is based upon the claim that her interest in the controversy disqualified her.

The proof that the testator was, at the time of his death, domiciled in Atlantic City, is plenary.   He said to Jacob Soutter, before he went to Atlantic City, that he was going there to stay always; to Patrick Taggart, about the middle of February, 1880, that he was going to quit selling ale on commission, and was going to build a hotel in Atlantic City for himself and his wife to live in; to John Carrigan, several times before he went to Atlantic City, that he was going to move there and make it his home; and to John Moore, in the fall of 1880, after he had moved to Atlantic City, that he intended to vote there the next year. He did, in fact, establish himself in Atlantic City.   He built a house there in the spring of 1880, which he furnished, and in which he actually resided from the time he went there in May or June, 1880, continuously, summer and winter, up to the time of his death.   There is no evidence whatever of his intention to retain his domicil in Philadelphia, but, on the contrary, the proof is that intentionally and deliberately he changed it from that place to Atlantic City.

But it is urged that he was not, at the time of his removal, possessed of a sufficient mental capacity to form an intention to change his domicil.   It will be convenient to dispose of this objection in connection with the allegation that he was not possessed of testamentary capacity when he made the will, which was but a few months before he went to Atlantic City.   The evidence adduced by the appellants to establish want of capacity is not of a character to warrant much consideration.   Some of it is of no weight whatever.   The conduct to which some of the appellant's witnesses testify as evidencing mental incapacity is all of it readily accounted for by the very probable suggestion that at the times of which they speak the testator was more or less intoxicated.   It appears that his business subjected him not only to great and very frequent temptation to indulgence, but to the necessity of drinking with his customers on his business visits to their establishments.   The testator undoubtedly, before he

quit business in Philadelphia, was afflicted with a difficulty of speech, which was the first outward manifestation of the disease (paralysis) of which he died a year or two afterwards. It appears by the testimony of his physician that in February, 1881, over a year after the will was made, he was possessed of ordinary intelligence. It also appears that in December, 1879, he bought the Atlantic City property. He built the house, as before stated, in the spring of 1880. He rented that property to Mr. Moore for a year from September, 1880, and boarded with him during that period, making the settlements of the rent and board. The testimony of the testamentary witnesses, especially that of Mr. McIntyre, the lawyer who drew the will and superintended its execution, shows that he was possessed of capacity when he executed the will. The evidence leads to the conclusion that there was no want of capacity either when the will was made or when he removed to Atlantic City. The testator was unable to read, and could only write his name. He sent the instructions for the will by his wife to Mr. McIntyre, and, eight or ten days afterwards, went to the lawyer's office and executed the instrument. There is no evidence of fraud on the part of his wife in obtaining the will. The proof is that the paper was read over to him before he signed it. Mr. McIntyre testifies that he read the will over to him before it was signed, and explained it item by item in the presence of the other witnesses, and that he " talked it all over to him twice." He says he was particular to do so because the testator had a difficulty or impediment in his speech. His son, John Henry McIntyre, who was also a witness to the will (Patrick O'Donnell, a conveyancer, was the other), testifies that the will was read over to the testator (he thinks word for word), and that the testator understood it. It appears clearly that the testator was well and fully acquainted with the contents of the instrument, the provisions of which were very few and simple. The will was executed with all due legal formalities. It may be stated here that the relations between the testator and his wife were of the most affectionate character, and it appears that she not only aided him in his business, keeping his accounts for him, which, from his want of education, he was wholly unable to keep

himself, but herself carried on business (a gentlemen's furnishing store), and that some of the money with which the house in Atlantic City was built was hers, or stood in her name, as she expresses it.

To dispose of the remaining objection, that Mrs. Mackin, the widow, was not, in view of her interest in the controversy, and her character of proponent therein, a competent witness for the will. Our act concerning evidence provides that no person shall be disqualified as a witness in any suit or proceedings at law or in equity by reason of his or her interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his or her credit; provided that no party shall be sworn in any case where the opposite party is prohibited by any legal disability from being sworn as a witness, or either of the parties in the cause sues, or is sued, in a representative capacity, except as the act subsequently provided. *Rev. p. 378.*

The supplement of 1880 provides that in all civil actions in any court of law or equity of this state, any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided that the supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in any such action. *P. L. of 1880 p. 52.*

So that a party to a suit or proceeding at law or in equity, whose adversary is the representative of a deceased person, is not disqualified from testifying therein by any interest he may have, or by reason of the fact that his adversary sues or is sued in such representative capacity, but he will not be permitted to testify to transactions with or statements of the deceased whom his antagonist represents. The widow's character of proponent does not impose any restriction on the scope of her testimony. As proponent, she is not a "party" in the sense in which that term is used in the statute. As the executrix named in the will, and having possession of the document, it was her duty to propound it for probate, and she could have been compelled to do so. The fact that she has presented it for judicial action, though it makes

her in a certain sense a party to the proceedings, does not make her so within the meaning of the statute which, by its prohibitory limitation, aims to prevent persons making claims by proceedings at law or in equity against the estates of deceased persons from profiting in their suit by means of their own testimony to transactions with, or statements of the deceased, which there may be no means of meeting or disproving. Neither the proponent nor the caveator, in a contest over the admission of a will to probate, is, as such, in any way limited in his testimony by the fact that he is a party to the proceedings. A proponent may have no interest in the controversy, except as he may be interested to receive the compensation, as executor, for his services in settling the estate, or performing the trusts devolved on him by the will, which he cannot receive if the will be denied probate. It would be absurd to deprive the persons interested under the will of the benefit of the proponent's testimony in any respect pertinent to the proceedings, by the mere fact that he is proponent, and so a party to the proceedings, and there is no ground for depriving him of the like benefit where he is himself interested. The proceedings are not a suit, but a judicial inquiry whether the instrument before the court is the last will and testament of the deceased. In this case, it may be remarked that if the testimony of the proponent were stricken from the record, the result would not be affected. It would still appear by the evidence that the instrument in question is the true last will of the testator.

The decree appealed from will be affirmed, with costs to be paid by the appellants.